JOHN DEN, EX DEM. THOMAS WOLLING AND WIFE AND EBENEZER HOLMES v. JOSEPH CAMP AND JAMES JESSUP

In Trespass and Ejectment for lands in Salem.

1. In determining the character and legal effect of an instrument, courts will ascertain, if they can, the intention of the parties, and give effect to that intention.

2. Whether an instrument shall operate as a grant or deed of partition will depend upon the intention of the parties, apparent upon the face of the instrument.

3. A party is not estopped by the recitals in a deed not executed by himself; nor, if executed by himself, is he estopped where the whole truth of the case appears in the recitals.

---

This was an action of Ejectment for lands in the county of Salem ; and was tried at the Circuit Court for that county, at the September term, 1840, when a verdict was entered for the plain-

tiff by consent, subject to the opinion of this court upon a state of the case to be agreed upon by the parties.

The following facts are taken from the statement agreed upon and most of them appear in the recitals of the deeds produced by the plaintiff.

John Holmes the elder, and Anna, his wife, William Dickerson and Hannah, his wife, together with Margaret Smith, being lawfully seized and possessed of a tract of land in the county of Salem, which had descended to the said Anna Holmes, Hannah Dickerson and Margaret Smith, previous to the covertures of the two former, agreed to make "an equal partition and division" thereof and on the twenty-second day of March seventeen hundred and sixty-nine, they executed to each other mutual releases. The premises in question formed part of the tract assigned and set off to John Holmes the elder and Anna his wife.

Anna Holmes died previous to the year 1780, leaving two children, Benjamin Holmes who also died previous to that year and John Holmes the younger, who thus became the sole heir at law of his mother and of his brother Benjamin.

John Holmes the younger, died in the year 1792, leaving two children, Samuel and Ezra.

John Holmes the elder, died in possession of the premises, in the year 1799, having first duly made and published his last will and testament, in manner and form as by law is required to pass real estate, and thereby devised, with other lands, the premises in dispute to his grand children Samuel and Ezra Holmes, sons of John Holmes the younger, when they arrived at the age of twenty-one years, to them and the heirs of their bodies lawfully begotten forever; but if either of them should die, before arriving at that age, without lawful issue, the share of the one so dying was to be equally divided between the survivor and the other children of the testator.

In the year 1803, the tract of land thus devised was divided between Samuel and Ezra Holmes, *as heirs at law of John Holmes the younger*, by commissioners appointed by the Orphans' Court of the county of Salem, and the premises in question assigned and set off to Ezra Holmes, who lived thereon until the year 1808, when he sold and conveyed the same to James Jessup, one of the defendants.

Ezra Holmes was born in 1786 and died in 1814, having had four children, Samuel and Ezra both dead without issue ; Hannah Ann, who married Thomas Wolling, and Ebenezer, who are the lessors of the plaintiff.

*H. W. Green* for plaintiff.

*Carpenter* and *L. Q. C. Elmer* for defendants.

The opinion of the Court, was delivered by

WHITEHEAD, J. On the trial of this cause at the Salem Circuit, September term, 1840, the jury, by the consent of parties, found a verdict for the plaintiff, subject to the opinion of the court, whether upon the state of the case agreed upon, the plaintiff is entitled to recover for the whole, or any part of the premises in dispute.

It appears by the state of the case, that John Holmes, (the elder,) died in possession of the premises, in the year 1799, having first duly made and published his last will and testament, in such manner as by law is required to pass real estate, and thereby devised a tract of land, including the premises in question, to his two grandsons Samuel Holmes and Ezra Holmes, sons of his son John Holmes dec. " when they arrive to the age of twenty-one years, to be equally divided between them, in quantity and quality, them and the heirs of their bodies lawfully begotten, forever ; but if either of them should die before they arrive to the age of twenty-one years without lawful issue, their share shall be divided between the surviving one and my children equally ; and if either or both of the said grand children should die, after they arrive to the age of twenty-one years without lawful issue, their share shall be divided bewteen all my children, to be equally divided in quantity and quality, to them, their heirs and assigns forever."

The tract of land thus devised to Samuel and Ezra Holmes, was, after the death of the grandfather, divided between them *as heirs at law of John Holmes the younger*, by commissioners appointed by the Judges of the Orphans' Court of the county of Salem, in the year 1803, and the premises in question assigned and set off to Ezra Holmes, who lived thereon until the year

1808, when he sold the same to James Jessup one of the defendants.

Ezra Holmes was born in 1786 and died in 1814. He had four children, his heirs at law, viz : Samuel and Ezra, both dead without issue, Samuel dying after his father ; Hannah Ann, who married Thomas Wolling, and Ebenezer the lessors of the plaintiff.

It appears by the recitals contained in the deed from Ezra Holmes and wife, to the defendant Jessup, that one Samuel Smith, by deed of gift to his son John Smith, dated January 3d, 1737, conveyed to him two tracts of land, one containing two hundred and forty, the other three hundred acres.

That afterwards, to wit, on the 21st November, 1741, Michael Walker and his wife conveyed to the said John Smith, a certain other tract of one hundred and ninety acres, adjoining the other lands above mentioned.

That the said John Smith, by his will dated March 22d, 1743, devised the two first tracts above mentioned, containing together five hundred and forty acres, " to his son Samuel Smith, he being the only son and heir ; and the said Samuel Smith some time after died intestate, by reason whereof the lands descended unto his surviving sisters, namely : Anna Holmes late Smith ; Margaret Smith and Hannah Dickinson late Smith." That the said John Smith, by his said will devised the one hundred and ninety acres of land " to his wife Mary Smith and his daughters Mary, Anna, Margaret, Jane and Hannah Smith. Mary and Jane died before they came of age to inherit, so that the lands fell to Mary Smith the widow, Anna Smith afterwards Anna Holmes, Margaret Smith and Hannah Smith afterwards Hannah Dickerson, and the said Mary Smith also departed this life, and in her will ordered her share of said one hundred and ninety acres of land, to be equally divided between her three daughters Anna Holmes, Margaret Smith and Hannah Dickerson, so that they became lawfully seized of, in and to all the one hundred and ninety acres of land as co-heirs at law : That John Holmes and Anna his wife, Margaret Smith, William Dickerson and Hannah his wife, by their mutual consents and agreements, came to an equal division and partition—and the said Margaret Smith, William Dickerson and Hannah his wife, by their indenture of release

bearing date, March 22d, 1769, did release and quitclaim unto the said John Holmes and Anna his wife, a certain part thereof, containing as per quitclaim, two hundred and ninety-one acres of land, (allowance for highways,) and the said John Holmes and Anna his wife, being so thereof seized, had a son by the name of John Holmes, who departed this life before his father, leaving two children, namely : Samuel Holmes and Ezra Holmes; and the said John Holmes the elder, by his last will and testament, did give and devise the said two hundred and ninety-one acres of land, unto his two grand children the above named Samuel and Ezra Holmes, to be equally divided between them. That petition was made to the judges of the Orphans' Court of Salem, in December term, 1802, for them to appoint commissioners to make division thereof, and a division thereof was made, as by the return of the commissioners in December term, 1803, recorded at Salem, will appear."

A copy of the indenture of release referred to in the foregoing recital, executed by Margaret Smith and William Dickerson and Hannah his wife, to John Holmes and Anna his wife, was offered in evidence by the plaintiff, and therein after a deduction of title, similar to that contained in the recital of the deed to the defendant Jessup, it recites, "And whereas John Holmes and Anna his wife, Margaret Smith, William Dickerson and Hannah his wife, by their mutual consents and agreements, have come to an equal division and partition, allowing and allotting unto John Holmes and Anna his wife and their heirs and assigns, the part to be hereby released and conveyed for their share. Now know ye, that the said Margaret Smith, William Dickerson and Hannah his wife, for and in consideration of their parts and shares to them released and forever quitclaimed by the said John Holmes and Anna his wife, do by these presents remise, release and forever quitclaim unto the said John Holmes and Anna his wife, and to their heirs and assigns, all our right, title and interest to the hereby released part, being part and parcel of the above mentioned lands," &c : To have and to hold all and singular the hereby demised premises, unto the said John Holmes and Anna his wife, their heirs and assigns, to the only proper use, benefit and behoof of them the said John Holmes and Anna his wife, their heirs and assigns forever, so that I the said

Margaret Smith and William Dickerson and Hannah his wife, nor their heirs nor any other person or persons in their names, right or stead, or in any of their names, shall or will by any means have, claim, challenge or demand any estate" &c. with covenant that if counsel shall think it reasonable to have any other instrument of writing for perfecting and releasing said premises that then &c.

On the part of the defendant, it was proved, in addition to the matters set forth in the foregoing recital, that Anna the first wife of John Holmes (the elder) died before the year 1780; that their eldest child was Benjamin Holmes, who died before the year 1780, without issue; that their next child was John Holmes (the younger) who was the heir at law, both of his mother Anna and his brother Benjamin; that John Holmes the younger died in the year 1792, leaving two children, Samuel and Ezra, as mentioned in the recital of the deed to the defendant Jessup.

Both parties claim under Ezra Holmes. The plaintiff insists, that under the will of John Holmes (the elder) Ezra took as heir in tail; that under our statute the entail was executed in his son Samuel, the second devisee in tail, and that upon his death without issue, the premises descended to the lessors of the plaintiff as his heirs at law.

The defendants admit, that if John Holmes (the elder) was seized in fee of the premises, the plaintiff is entitled to recover; but they deny such seizin; and hence the important inquiry is, what estate had he in these premises? This will depend upon the construction to be given to the instrument executed by Margaret Smith and William Dickerson and wife to John Holmes and wife, called in the recital of the deed to the defendant Jessup, " an indenture of release."

The three sisters, Anna the wife of Holmes, Margaret Smith and Hannah the wife of Dickerson, being seized in fee of a large tract of land including the premises in question, under the will of their father John Smith, and as the heirs at law of their brother Samuel Smith and sisters Mary and Jane, " came to an equal division and partition, allowing and allotting unto John Holmes and Anna his wife and their heirs and assigns," a certain part of the premises in the instrument of writing particularly described, and thereupon the same was executed to them as

above mentioned. Did this instrument operate as a grant of the premises therein described to Holmes and wife, or only as a deed of partition?

If the former, then Holmes having survived his wife became seized of the whole, 2 *Blackstone Com.* 182, and could devise the same; if the latter, then the possession only was severed, the fee remained in his wife Anna, and upon her death it descended to her heir at law, subject however, to the courtesy of the husband. In order to determine the character of this instrument and its legal effect, we must ascertain if we can, the intention of the parties, and if possible, give effect to that intention. In the language of Lord Mansfield, in *Goodtitle* v. *Bailey, Cowper Rep.* 601, " the rules laid down in respect to the construction of deeds are founded in law, reason and common sense; that they shall operate according to the intention of the parties, if by law they may : and if they cannot operate in one form, they shall operate in that way, which by law will effectuate that intention." In *Roe* v. *Tranmer, 2d Wilson Rep.* 75, Willes, Chief Justice says, " It appears from the cases on this head in general, that the judges have been *astuti* to carry the intent of the parties into execution," and he quotes in terms of commendation from Lord Hobart, who says, " I exceedingly commend the judges that are curious and almost subtile, *astuti,* to invent reason and means to make acts according to the just *intent* of the parties, and to avoid wrong and injury, which by rigid rules might be wrought out of the act."

Now what was the intention of the parties to this instrument? That intent is apparent upon its face. It was, " to make an equal division and partition." Their object was to sever the possession, before undivided. Holmes being tenant by the courtesy initiate of the undivided interest of his wife in the whole tract, became after the execution of this deed, tenant by the courtesy initiate of that part assigned to him and his wife. His wife's estate remained unaffected. She was, in respect to the divided share (in the language of the books) in of her former estate. She had done no act to divest herself of her interest therein. To give to this instrument the effect of a grant, as contended for by the plaintiff's counsel, would be to divest her of her estate in the premises, without any act of her own. For it should be ob-

served, there is no evidence of any instrument of a similar character having been executed by Holmes and wife to either of the other owners; nor is there any evidence of assent, either express or implied on the part of the wife, to the arrangement, that the deed should be made to her husband and herself. If we therefore, under the evidence in this case give to the instrument the effect of a grant, we may be establishing an easy way for a designing husband to possess himself of his wife's interest in land, when the same is held by her jointly with others.

It matters not, from the view I take of this instrument, whether these sisters held the land as co-parceners, joint tenants or tenants in common; for had it been held in either way, the effect must be the same, if we treat the instrument according to the manifest intention of the parties as a deed of partition, designed only to adjust the possession, leaving the rights of the parties in other respects the same.

If I am right in the construction of this instrument, then Anna the wife of John Holmes was not divested of her estate in these premises, and upon her death they descended to her oldest son Benjamin, and from him the chain of title is perfect to the defendant Jessup.

It is said however, that the defendant Jessup, is estopped by the recitals in his deed to deny that John Holmes (the elder) was seized of the land, and had right to devise the same by will.

The doctrine of estoppel has no application to this case. For independent of the fact, that the deed to Jessup was not executed by him, and consequently does not conclude him, the whole truth of the case appears in these recitals.

While it is there stated, that John Holmes and wife were seized, and that John Holmes devised the land, it also appears, that the three sisters, Mrs. Holmes, Margaret Smith and Mrs. Dickerson were lawfully seized, and being so seized, "*by their mutual consents and agreements came to an equal division and partition*," showing that John Holmes had no estate therein to devise. A man shall not be estopped when the truth appears by the same record. *Comyn Dig. Tit. Estoppel, E.* 2; 8 *Cowen R.* 586.

WHITE, Justice having been concerned as counsel, while at the bar, delivered no opinion.

*Judgment for defendants.*

CITED *in Den* v. *Howell, Spencer* 416.